GEORGE W. YOUNG, Appellee, v. T. A. GORMLEY AND S. P. GEIGER, Appellants.

Pleadings: ARREST: ALLEGATION OF: LOSS OF TIME. In an action for an illegal arrest, an allegation that plaintiff was deprived of his liberty implies loss of time.

Evidence in Aggravation of Damages. In an action for an illegal arrest plaintiff may show in aggravation of damages that he was arrested in the presence of his family.

Illegal Arrest. RESPONSIBILITY OF MAYOR: EVIDENCE. In an action against the marshal and mayor of a town for an illegal arrest of one claimed to have interfered with the city officials in their efforts to open a claimed street, the fact that the mayor directed the marshal to protect the street commissioner in opening the street, and when arrested refused to discharge plaintiff and caused him to repeatedly appear for trial, finally informing him there was no charge made, is sufficient to connect the mayor with responsibility for the arrest.

Interference with Private Property: AUTHORITY OF CITY OFFICIALS: ARREST. A mayor or other city officials have no more right as such officers to dispossess a citizen of the town of land claimed by him without legal process than one citizen has to dispossess another, and when a citizen resists the wrongful and unauthorized acts of city officials in interfering with his property and is arrested without warrant, the arrest is wrongful.

Assessment of Damages: MENTAL PAIN. In an action for wrongful arrest, the facts and circumstances being shown, the jury may therefrom assess such damages, which, as fair minded men, they believe just and reasonable to allow for mental suffering and humiliation.

Same. Damages for mental pain and suffering are actual, not punitive.

*Appeal from Lynn District Court.*—HON. H. M. REMLEY, Judge.

THURSDAY, MAY 14, 1903.

ACTION for damages for an alleged illegal arrest. Verdict and judgment for plaintiff, and defendants appeal.— *Affirmed.*

*William Glenn* and *Jamison & Smyth* for appellants.

*C. W. Kepler* and *Smith & Smith* for appellee.

WEAVER, J.—The evidence tends to establish the following facts: The appellants are, respectively, mayor and marshal of the town of Mt. Vernon. On the claim that certain land occupied by the plaintiff was a public street, the mayor ordered the fences, sidewalk, and other obstruc-

tions to the use of said alleged street removed therefrom. The plaintiff resisting such interference with his possession, the marshal, acting under the orders of the mayor, but without warrant, arrested him. On being taken before the mayor, plaintiff demanded to know the charge made against him, and asked for a trial; but the mayor, stating that he desired time "to consult counsel," refused to proceed, but also refused to order a discharge of plaintiff, and continued the proceedings to a later hour. Later in the day, plaintiff appeared and again demanded trial; but the mayor again declined to proceed, and appointed a still later hour for the hearing. At the hour named, plaintiff again appeared; and for a third time the mayor refused to proceed, but refused to discharge plaintiff, telling him that he considered him still under arrest. Several days later the plaintiff made his final appearance, and was told there was no complaint against him. No information was, in fact, ever filed against him, and no case was ever docketed against him by the mayor. Plaintiff alleges that the arrest was illegal and wanton, and put him to expense and loss of time, and sets out various matters, having more or less support in the testimony, tending to show that said arrest was made in a manner and under circumstances causing him humiliation and disgrace. The defendants deny the plaintiff's claim, and allege tl at, in all they did in reference to the matters of which complaint is made, they acted in their official capacity and in good faith. The jury returned a verdict for the plaintiff for $400.

I. It is first argued by appellants that there were no allegations of special damages by the plaintiff, and that much of the testimony as to loss of time and other circum-

1. ARREST: allegation of: loss of time. stances was inadmissible. It is true, the petition does not set out any specific item or amount as claimed for loss of time, but it does allege the fact that plaintiff was deprived of his liberty; and this, we think, sufficiently implies a loss of time.

Error is further alleged upon the ruling of the court permitting plaintiff to testify that the arrest was made in the presence of his mother, wife, and son. The ruling was

**2. EVIDENCE in aggravation of damages.** correct. While loss of time and expense are usual incidents to claims like the one in suit, the principal ground of recovery in most cases of this kind is the shame and humiliation to which the injured party has been wrongfully subjected. These consequences of the wrongful act depend in a great degree upon the circumstances of time, place, and publicity by which it is attended. We have held that, in a civil action for assault and battery, it is proper to show in aggravation of damages the presence of others at the time of the injury, because "an insult or indignity which is suffered in the presence of others is more humiliating than the same wrong would be if perpetrated in private." *Root v. Sturdivant*, 70 Iowa, 58. The same rule was adhered to in an action for malicious prosecution. *Flam v. Lee*, 116 Iowa, 289. We are cited to no authority to the contrary, nor do we think that any can readily be found. The cases referred to by counsel go only to the proposition that, in an action to recover damages sustained by reason of a defendant's negligence plaintiff cannot be allowed to appeal to the sympathy of the jurors by testimony as to his family and family relations. *Kreuziger v. R. R.*, 73 Wis. 158 (40 N. W. Rep. 657). Other points are made upon the introduction of evidence, but do not raise questions of importance, and it is sufficient to say we think there was no prejudicial error in the rulings excepted to.

II. At the close of the testimony the appellant Gormley moved for a directed verdict in his behalf, and, this motion being denied, error is assigned upon the ruling.

**3. ILLEGAL arrest: responsibility of mayor: evidence.** The first ground of this contention is that there is no evidence justifying the conclusion that Gormley was in any manner responsible for plaintiff's arrest. We do not so understand the record.

While the testimony of Geiger is apparently contradictory upon this particular matter, he is represented in at least one place as testifying that he was acting under Gormley's orders. Moreover, both he and Gormley. admit that the latter directed the former to protect the street commissioner in tearing down plaintiff's fence, and to keep the alleged street open, and to prevent the fence being rebuilt. This, followed by his recognition of the arrest, his refusal to discharge the plaintiff, and causing him to repeatedly appear in the mayor's court before informing him that there was no case against him is certainly sufficient to sustain a finding by the jury that he and the marshal were acting conjointly in this effort to overcome plaintiff's resistance to their attempt to oust him from the land in dispute.

But it is further insisted that no cause of action was shown against Gormley because the acts complained of were performed in his capacity as mayor. Unfortunately

4. INTERFER-
ENCE with
private prop-
erty: author-
ity of city
officials:
arrest.

that fact, if admitted, does not necessarily constitute a defense. If a mayor, conceiving the idea that his town is entitled to a tract of land in the possession of a citizen, forcibly ejects the latter without legal process, or if he directs the marshal to take such measures, he acts at his peril, notwithstanding his entire good faith and honest belief that he is strictly within the limits of his authority. If in fact the town have no title to the land, and no right to throw it open as a street, he and all others who are actively engaged in the invasion of the citizen's property are trespassers, notwithstanding their official character; and the owner of the property has the same right to defend his possession against them that he may employ against unofficial assailants. In other words, the municipal corporation and its officers have no more authority, as such, to dispossess a citizen without legal process, than one citizen has to dispossess another. The courts are open to all per-

sons and municipalities for the settlement of such disputes, and, when settled, proper orders and writs may be obtained to place and keep the rightful owner in possession. In the case before us no attempt whatever was made to show that the land in dispute is a street. On cross-examination of the plaintiff's witnesses it was drawn out that more than forty years ago a tract of land, including the alleged street, was platted and mapped with lots as Young's addition to Mt. Vernon, and the land in controversy is a strip between lots numbered three and four; but whether such plat was ever acknowledged and recorded as provided by law, or was ever recognized or accepted by the town, is left wholly to conjecture. The plat itself is not in evidence. The property has been occupied for at least forty-five years for residence purposes. The plaintiff's residence extends several feet into the alleged street on one side, and another residence extends into it from the other. For forty years the entire tract has been inclosed, occupied, and improved as a part of the homestead property, and upon the street front a sidewalk has for a long time been maintained.

No excuse or justification is offered for the movement against plaintiff and his property, except the advice of counsel to the effect that it would be wise "to go on and treat the street as a public street, and throw it open to the public," and thus bring on an action by the plaintiff in which the legal rights of the parties might be settled. This advice did not go to the extent of suggesting the arrest and punishment of plaintiff if he resisted this method of eviction, and, even if it had, we cannot conceive that advice of counsel is a sufficient justification in an action for false imprisonment. It may be material to rebut any presumption of malice, and thus to defeat a demand for exemplary damages, but will not deprive the plaintiff of his right to recover actual damages. *Frazier v. Turner*, 76 Wis. 562 (45 N. W. Rep. 411); *Fire Ass'n v. Fleming,*

78 Ga. 733 (3 S. E. Rep. 420); *Josselyn v. McAllister*, 22 Mich. 300. The law jealously guards the liberty of the citizen, and the public officer who interferes with that right must be acting within the scope of his authority or jurisdiction to escape personal liability therefor. Within that limit he may act, and be safe against civil liability in damages, even though he act mistakenly, or, as is held in some cases, even though he act corruptly or maliciously. But for an act which is clearly and unquestionably beyond his jurisdiction—an act for which he has no authority, in law, under any circumstances—he is answerable to the same extent as is the private citizen. *Thompson v. Whipple*, 54 Ark. 203 (15 S. W. Rep. 604); *Burlingham v. Wylee*, 2 Root., 152; *Davis v. American Society*, 75 N. Y. 362.

No officer may rightfully arrest or cause the arrest of another without warrant, except as provided by statute. It is unnecessary, however, to discuss this aspect of the situation, for plaintiff was charged with no offense, and appellants do not plead or seek to prove any act on his part exposing him to arrest. So far as shown, he was upon his own premises. The officers of the town, without warrant and without legal process, and against his express protest, proceeded to tear down his fence. He had the right to resist this attack with the use of such reasonable force as was necessary to protect his possession, and his arrest was clearly unauthorized and wrongful.

III. Exceptions are taken to the instructions given the jury. Most of the questions thus presented are governed by the propositions already discussed, and we need 5. ASSESSMENT not further consider them. It is said the jury of damages; mental pain. were not properly instructed as to the measure of damages, in that the court after withdrawing the claim for exemplary damages, said to the jury that, if they found for the plaintiff, they should assess in his favor such sum as, in their judgment as reasonable and prudent men, would fairly compensate him for his expenses and loss of

time, and for such mental suffering and humiliation as he sustained by defendants' wrongful act. Counsel say, "It is not the rule that a jury are to fix the amount of compensation upon their own opinion and judgment as reasonable and prudent men." But if this is not the rule, the argument does not favor us with any statement of its proper form or substance. Of course, if the language quoted is to be interpreted as giving the jury license to fix a recovery without regard to the testimony, then it is wrong; but the instruction, as written, distinctly negatives that idea. In the very nature of things, it is not possible for the injured party to open up his mental and emotional experiences in such manner that the jury may examine them as they would examine a map or chart, or may compute and measure his compensation as they would compute the sum due on a promissory note; but, the facts and circumstances of the alleged wrong being given, the jury must be permitted to take them, and therefrom to fix the compensation which they, as fair-minded men, may believe to be just and reasonable. Mental suffering and its extent are ordinarily to be inferred from the nature of the injury itself. *Stone v. Heywood*, 7 Allen, 118. And many cases hold that no evidence other than that of the injury itself is required to justify the jury in assessing damages for consequent mental pain. *St. Louis, etc., v. Trimble*, 54 Ark. 354 (15 S. W. Rep. 899); *Boldt v. Budwig*, 19 Neb. 739 (28 N. W. Rep. 280). The impossibility of formulating any exact rule or standard for measuring compensation in dollars and cents for physical or mental suffering is recognized by the courts, but "the law does not refuse to take notice of such injury, on account of the difficulty of ascertaining its degree." *Ballou v. Farnum*, 11 Allen, 73. It is better to leave the assessment of damages to the jury, "under the wise supervision of the presiding judge with his power to set aside excessive verdicts, than on accounts of such difficulty to require parties injured in their

feelings by the negligence, malice, or wantonness of others to go without remedy." *Young v. W. U. Tel. Co.*, 107 N. C. 370 (11 S. E. Rep. 1044, 9 L. R. A. 669, 22 Am. St. Rep. 883); *Sloane v. R. R.*, 111 Cal. 668 (44 Pac. Rep. 320, 32 L. R. A. 193). Strictly speaking, the word "compensation," as used in this connection, does not adequately express the idea intended, but is usually employed for want of a better phrase to express the thought which underlies the right of recovery for such · injuries. It is not a matter of price or market values, but is a substantial award for injuries for which there is no other legal redress, and its amount is left to the sound discretion of the jury. *Morris v. R. R.*, 45 Iowa, 30; *Goodhart v. R. R.*, 177 Pa. 1 (35 Atl. Rep. 191, 55 Am. St. Rep. 705); *Morgan v. R. R.*, 95 Cal. 501 (30 Pac. Rep. 601); *Head v. R. R.*, 79 Ga. 358 (7 S. E. Rep. 217, 11 Am. St. Rep. 434); *Ives v. Humphreys*, 1 E. D. Smith, 196. We find no error in the instructions of the trial court in this respect. Neither can the appellants' objection that the damages found are excessive be sustained. The recovery is not so great as to appear to have been the result of prejudice, partiality, or corruption, and we are not authorized to interfere with it.

Nor is it necessary for us to conclude that exemplary damages were allowed. Counsel seem to proceed upon the theory that plaintiff's loss of time and expenses for attorney's fees constitute the only actual damage done, and that the damages in excess

6, SAME.

of such sum are exemplary, and consequently against the instruction of the court withdrawing such claim. Damages for mental pain and suffering, under the rule followed in this state, are treated as actual, not punitive; and, the case having been properly submitted to the jury on that theory, the objection made is not well taken.

The judgment appealed from is AFFIRMED.